Robert Neff and Sons, Inc., et al., Appellants, v. City of Lancaster, Appellee.

(No. 69-62—Decided January 14, 1970.)

32

*Messrs. Dagger, Lantz & Johnston* and *Mr. Roger W. McNaughton,* for appellants.

*Mr. John T. Huddle,* law director, for appellee.

MATTHIAS, J. The specific question of law presented by this case is whether plaintiffs have pleaded facts sufficient to state a cause of action under the applicable laws of Ohio.

Plaintiffs base their claim upon the provisions of Section 723.01, Revised Code:

"Municipal corporations shall have special power to regulate the use of the streets. The legislative authority of such municipal corporation shall have the care, super-

vision, and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, *and shall cause them to be kept open, in repair, and free from nuisance."* (Emphasis added.)

Defendant relies upon Section 5577.05, Revised Code, which provides, in part:

"No vehicle shall be operated upon the public highways, streets, bridges, and culverts within the state, whose dimensions exceed those specified in this section.

"* * *

"(C) No such vehicle shall have a height in excess of thirteen feet six inches, with or without load.

"* * *

"*This section does not require the state, a municipal corporation, county, township, or any railroad or other private corporate to provide sufficient vertical clearance to permit the operation of such vehicle, or to make any changes in or about existing structures now crossing streets, roads, and other public thoroughfares in this state."* (Emphasis added.)

It is established law in this state that the provisions of Section 723.01, Revised Code, insofar as they pertain to highways, extend only to those conditions affecting the actual physical conditions existing in or on the highway itself. *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71 (paragraph three of the syllabus). Defendant would have us construe the statute so that it would not encompass conditions above the surface of the roadway such as, in this case, an overhanging limb. This we decline to do. See *Fankhauser* v. *Mansfield* (1969), 19 Ohio St. 2d 102. By the use of the words "on highways" in the *Gabris case* we meant conditions above as well as on the surface of the highway.

Section 723.01, Revised Code, imposes a general duty of care of the streets upon municipalities in Ohio. There is authority from other jurisdictions that such a statute may create a cause of action in favor of a plaintiff against a municipality for harm caused by an overhanging limb,

where the city has notice, actual or constructive, of the dangerous condition and permits it to continue. *Tate* v. *Greenville* (1956), 228 S. C. 530, 91 S. E. 2d 161; *Lapchenko* v. *State* (1956), 2 Misc. 2d 478, 153 N. Y. Supp. 2d 364; *Fox* v. *Village of Nassau* (1943), 266 App. Div. 1058, 44 N. Y. Supp. 2d 906; *Embler* v. *Town of Walkill* (1890), 10 N. Y. Supp. 797, 57 Hun. 384, affirmed, 132 N. Y. 222, 30 N. E. 404; *Galloway* v. *Winchester* (1945), 299 Ky. 87, 184 S. W. 2d 890; *Louisville* v. *Michels* (1903), 114 Ky. 551, 71 S. W. 511; *Valvoline Oil Co.* v. *Winthrop* (1920), 235 Mass. 515, 126 N. E. 895; *Meridian City Lines* v. *Baker* (1949), 206 Miss. 58, 39 So. 2d 541. Cf. *Inabinett* v. *State Highway Dept.* (1941), 196 S. C. 117, 12 S. E. 2d 848. See, generally, annotations, 19 A. L. R. 1021, 49 A. L. R. 840, 54 A. L. R. 2d 1195.

In *Yackee* v. *Napoleon* (1939), 135 Ohio St. 344, this court allowed recovery against a municipality by the plaintiff administratrix in a wrongful death action. The decedent, sitting on top of a truck when it was driven under a low railroad overpass, was killed as the result of a blow to the right side of his head.

At page 349, in the opinion in the *Yackee case,* Judge Hart stated:

"A municipal corporation holds the fee in its streets in trust for the purpose of public travel and transportation, subject to the right of the state to direct the method and manner by which such trust shall be administered, and is charged at all times by reason of Section 3714, General Code [Section 723.01, Revised Code], with the inescapable duty to keep such streets open, in repair and free from nuisance. *This duty and requirement extends to the space above as well as the surface of the street. * * *"* (Emphasis added.)

This rule was adopted in paragraph one of the syllabus of the *Yackee case,* which provides:

"The duty of a municipal corporation under Section 3714, General Code, to keep its streets open, in repair and free from nuisance, extends to structures or conditions located not only upon but above the surface of such streets,

where such structures or conditions interfere with, or make dangerous, travel thereon.''

We believe that the rule of the *Yackee case* is appropriate to the instant case. We can find no basis in reason for distinguishing a nuisance to traffic, created by a low overhanging limb of a tree, from a nuisance to traffic arising from the erection of an overhead structure which is so low as to constitute a dangerous condition to persons and vehicles lawfully using the roadway.

Further discussion is warranted, however, in view of the defendant's reliance upon the provisions of Section 5577.05, Revised Code.

It appears that the railroad viaduct involved in the *Yackee case* was sufficient for all lawful traffic at the time it was originally built in 1895. However, as vehicles of greater height came into use, that degree of vertical clearance became insufficient. This court, in the *Yackee case,* took cognizance of the fact that the clearance under the viaduct was only ten feet, whereas Section 7248-2, General Code (present Section 5577.05, Revised Code), allowed vehicles up to 12 feet 6 inches in height to travel the highways lawfully. Clearly, the structure did not provide adequate clearance for all lawful vehicles at the time of that case.

Subsequent to this court's decision in the *Yackee case,* the General Assembly modified Section 7248-2, General Code (now Section 5577.05, Revised Code). By amendment in 1949 (123 Ohio Laws 557), the height limitation was increased to 13 feet 6 inches, and the following provision was added to the last paragraph:

''Provided further, that nothing herein contained shall be construed to require the state, a municipality, county, township, or any railroad or other private corporation to provide sufficient vertical clearance to permit the operation of such vehicles, or make any changes in or about existing structures now crossing streets, roads and other public thoroughfares in the state of Ohio.''

In interpreting this section in the case of *Brelo* v. *New York Central Rd. Co.* (1960), 112 Ohio App. 145, the Court

of Appeals for Cuyahoga County stated, in paragraph one of the syllabus:

"The maximum height permitted for motor vehicles by the first paragraph of Section 5577.05, Revised Code, does not, by reason of the last paragraph of that section, regulate the minimum vertical clearance of existing structures now crossing streets, roads or other public thoroughfares, nor does it create a nuisance out of an overpass, railroad or otherwise, which, although of sufficient height when built, does not now provide sufficient clearance to accommodate motor vehicles coming within new statutory permissible height limits."

On page 150 in the opinion by the Court of Appeals, we find the statement that:

"There can be no doubt that the Legislature intended by this amendment to nullify the law of the case of *Yackee, Admx.,* v. *Village of Napoleon* (1939), 135 Ohio St. 344, 21 N. E. 2d 111. This purpose was clearly accomplished."

We do not concur in the view that the statute exonerates a municipality from liability for low structures or overhanging limbs, or other similar dangerous conditions under all circumstances. Surely a municipality could not build an obstruction three feet above a public highway and yet comply with the general standard of conduct contained in Section 723.01, Revised Code, with respect to public highways (*i. e.,* keep them "open, in repair, and free from nuisance"). As we view the 1949 amendment to Section 7248-2, General Code (now Section 5577.05, Revised Code), it modifies the rule of the *Yackee case* to the extent that the general standard of Section 723.01, Revised Code, cannot be read in conjunction with the specific height standard of Section 5577.05, Revised Code, to create a specific mandatory duty on the part of municipalities to provide 13 feet 6 inches of clearance everywhere within the city.

We believe that Section 5577.05, Revised Code, does release a municipality from any obligation to provide verti-

cal clearance for *maximum size vehicles*, and to the extent that the *Yackee case* stood for the proposition that a municipality had to provide clearance for *maximum size vehicles* it is no longer controlling. Nevertheless, an overhanging limb could reach down so far as to impede even ordinary vehicular traffic. Such a condition, if allowed to endure, could become a nuisance within the meaning of Section 723.01, Revised Code. A failure by a municipality to trim or remove such a limb, after notice, could be determined to be a breach of its obligation to keep the street "open, in repair, and free from nuisance," imposed by Section 723.01, Revised Code.

We believe that the kind and type of traffic which ordinarily travels upon a particular street bears a strong relationship to the question of whether a particular obstruction to vertical clearance is dangerous, and a "nuisance" within the meaning of that term as used in Section 723.01, Revised Code. For instance, we do not believe as great a degree of vertical clearance is needed on a secluded residential street as upon a heavily traveled major thoroughfare.

With this in mind, we are unable to find that the 1949 amendment to Section 7248-2, General Code (now Section 5577.05, Revised Code), abolishes completely the rule contained in the first paragraph of the syllabus of *Yackee* that the duty imposed upon a municipal corporation to keep its streets open, in repair and free from nuisance extends to conditions and structures above the surface of the street as well as upon the surface of the street.

Even were we to judicially notice that East Main Street in Lancaster is a major thoroughfare, we cannot resolve this case on the basis of the information contained in the pleadings. The petition in this case does not give the height of the "highway livestock trailer." Nor does it allege how low the limb protruded over East Main Street. Were these allegations in the petition we might be able to determine that no cause of action exists as a matter of law under Section 5577.05, Revised Code. Since they

**38**

are not, we must conclude that some condition existed which might result in liability to the defendant city under the provisions of Section 723.01, Revised Code.

Therefore, we reverse the judgment of the Court of Appeals and remand the cause to the Common Pleas Court for further proceedings.

*Judgment reversed.*

TAFT, C. J., O'NEILL, DUNCAN and CORRIGAN, JJ., concur.

HERBERT, J., concurring. The third paragraph of the syllabus in *Gabris* v. *Blake* (1967), 9 Ohio St. 2d 71, 223 N. E. 2d 597, unambiguously states that Section 723.01, Revised Code, applies solely to conditions existing either "in or on highways, streets and public grounds themselves."

In the case at bar we have concluded that Section 723.01, Revised Code, applies, under certain circumstances, to "conditions located not only upon but above the surface" of highways and streets.

For the sake of those who must interpret and work with our decisions, we should now overrule the third paragraph of the syllabus in *Gabris* v. *Blake, supra.*